No. 05-668

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 248

_____

P. KAY BUGGER,

        Plaintiff, Counter-Defendant, and
        Appellant,

    v.

MIKE McGOUGH,

        Defendant and Respondent,

    and

MARK JOHNSON,

        Defendant, Counter-Claimant and Respondent.

_____

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                    In and for the County of Gallatin, Cause No. DV 02-57,
                    The Honorable Holly Brown, Presiding Judge.

COUNSEL OF RECORD:

        For Appellant:

             Geoffrey C. Angel, Angel Law Firm, Bozeman, Montana

        For Respondent:

             Jane Mersen, Kasting, Kauffman, & Mersen, P.C., Bozeman, Montana

_____

Submitted on Briefs:  August 8, 2006
Decided:  October 3, 2006

Filed:

_____
                         Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Appellant P. Kay Bugger (Bugger) rented a house in Bozeman from Respondent Mark Johnson (Johnson).  Respondent Mike McGough (McGough) served as Johnson's caretaker.  Bugger brought a claim against McGough and Johnson to recover her security deposit.  The claim alleged that Johnson and McGough violated provisions of the Montana Landlord and Tenant Act, the Residential Security Deposit Act, and breached the covenant of good faith and fair dealing.  A jury found for Johnson and the District Court for the Eighteenth Judicial District, Gallatin County, awarded $20,479.71 in attorney's fees and costs.  Bugger appeals and we affirm.

¶2     We address the following issues:

¶3     1.  Did the District Court's award of attorney's fees for $20,479.71 to Johnson exceed the jurisdictional limit applied to the review of a justice court determination?

¶4     2.  Did the District Court properly grant summary judgment in favor of McGough?

¶5     3.  Did the District Court abuse its discretion when it granted Johnson's motion to withdraw certain admissions?

¶6     4.  Did the District Court's instructions and special verdict form fully and fairly instruct the jury on the applicable law?

¶7     5.  Did substantial evidence support the jury verdict?

¶8     6.  Did the District Court abuse its discretion in awarding $20,479.71 to Johnson in attorney's fees and costs?

FACTS AND PROCEDURAL HISTORY

¶9     Bugger entered into a one-year lease agreement with Steve McGough (Steve) in

2

November 1998, for a newly constructed home at 112 Meghans Way in Bozeman. Johnson purchased the property from Steve in the spring of 1999 for investment purposes. Johnson lived in Minnesota with his wife Karen Johnson (Karen). Bugger entered into a new one-year lease agreement on August 1, 1999, with Karen listed as the landlord.

¶10 Bugger met with Karen on at least one occasion after signing the lease. Bugger made out the rental checks directly to Karen. The Johnsons wanted a local contact person and sought the help of Mike McGough, Steve's brother, because he lived close to the rental. McGough met with Bugger and introduced himself in his caretaker capacity.

¶11 Bugger eventually decided not to renew the lease and received a 30-day notice of eviction. The parties disputed the notice and move-out date. Bugger alleged she turned over the keys on September 4, 2000, and completely moved out by September 5, 2000. Johnson claims that Bugger moved out late on the night of September 6, 2000.

¶12 Johnson sent Bugger a letter dated October 4, 2000, in which he enclosed a check for $180.32. The letter explained his actions in retaining the remainder of her $1,000.00 deposit. He cited general cleaning, repairs to the trim and woodwork, professional carpet cleaning services, unpaid water bills, insufficient funds charges on two rent checks, and carpet damage caused by an unauthorized pet.

¶13 Bugger, acting *pro se*, filed an action in Gallatin County Justice Court against McGough and Johnson pursuant to the Montana Residential Landlord and Tenant Act (MLTA). Title 70, Chapter 24, MCA. Bugger claimed she received inadequate notice of eviction, that McGough and Johnson failed to notify and give her time to remedy the

3

deficiency with respect to cleaning, and that she did not receive her deposit refund check until 30 days after vacating the property. Bugger also claimed that her refrigerator sustained damage during the installation of an automatic garage door opener by Johnson and sought the replacement cost of $1,600.00. Bugger served McGough with the complaint and summons, but did not serve Johnson.

¶14 The Justice Court sitting without a jury found for McGough and awarded him attorney's fees and costs totaling $1,737.17, later revising it to $2,178.77. Bugger retained counsel and appealed to the District Court.

¶15 Johnson filed a motion in the District Court to dismiss on the grounds that Bugger never served him with the complaint and summons. McGough filed a separate motion for summary judgment. The District Court granted Johnson's motion to dismiss without prejudice on the grounds that Bugger had failed to serve him properly. The court granted summary judgment in favor of McGough in the same order. We issued an Order on March 21, 2003, dismissing as interlocutory Bugger's appeal of the award of attorney's fees in favor of McGough.

¶16 Bugger, still represented by counsel, filed an amended complaint in the District Court against Johnson and McGough. Bugger served Johnson with requests for admissions and Johnson's responses were due on March 24, 2003. The requests sought admissions from Johnson that he failed to provide a written statement of the damages within 30 days, that he failed to provide a written statement of the cleaning deficiency, and that he failed to provide written notice of 24 hours to remedy the deficiency.

4

¶17  Johnson requested more time from Bugger on March 21, 2003, to complete the responses. Bugger did not reply and on March 25, 2003, one day after the deadline, Bugger instead filed with the Court a Notice of Facts Deemed Admitted. Johnson submitted his responses to Bugger the next day, March 26, 2003. The District Court permitted Johnson to withdraw the admissions on June 15, 2004, under Rule 36(b), M. R. Civ. P., concluding that the withdrawal would serve the merits of the case and that Bugger did not suffer prejudice.

¶18  After a three-day trial, the court submitted a total of 40 jury instructions and the jury completed a special verdict form. The jury determined that Johnson had provided a written list of damages within 30 days of the end of the tenancy, that Johnson did not improperly withhold a portion of Bugger's deposit, and that Johnson did not breach the covenant of good faith and fair dealing or act with actual fraud or malice. The jury also determined that Bugger was estopped from claiming a right to notice of deficient cleaning and that she had materially breached the lease agreement and damaged the property. The jury awarded $742.19 in damages resulting from Bugger's occupancy. The District Court entered judgment in favor of Johnson for $742.19 as damages and $20,479.71 for attorney's fees and costs. Bugger appeals.

STANDARD OF REVIEW

¶19  Whether a court has subject matter jurisdiction presents a question of law. We review a district court's conclusions of law to determine whether they are correct. *CBM Collections, Inc. v. Ferreira*, 2005 MT 170, ¶ 4, 327 Mont. 479, ¶ 4, 115 P.3d 211, ¶ 4 (citation omitted). We review *de novo* a district court's grant of summary judgment.

*Petroleum Tank Release v. Capitol Indem.*, 2006 MT 133, ¶ 12, 332 Mont. 352, ¶ 12, 137 P.3d 522, ¶ 12.

¶20 The District Court sits in the best position to determine good faith discovery efforts and, as a result, we review discovery rulings under an abuse of discretion standard. *In re S.C.*, 2005 MT 241, ¶ 16, 328 Mont. 476, ¶ 16, 121 P.3d 552, ¶ 16. We also review a district court's decision to give or refuse to give proffered jury instructions and to use a special verdict form for an abuse of discretion. *Kiely Const., L.L.C. v. City of Red Lodge*, 2002 MT 241, ¶¶ 57, 62, 312 Mont. 52, ¶¶ 57, 62, 57 P.3d 836, ¶¶ 57, 62. Finally, this Court reviews a district court's award of reasonable attorney's fees for an abuse of discretion. *Chase v. Bearpaw Ranch Ass'n*, 2006 MT 67, ¶ 15, 331 Mont. 421, ¶ 15, 133 P.3d. 190, ¶ 15.

ISSUE ONE

¶21 *Did the District Court's award of attorney's fees for $20,479.71 to Johnson exceed the jurisdictional limit applied to the review of a justice court determination?*

¶22 Bugger contends that the District Court exceeded its jurisdiction by awarding attorney's fees to Johnson for $20,479.71, on the grounds that the jurisdictional limit of $7,000 for justice court claims applies to a district court on appeal. The District Court, in awarding Johnson $20,479.71 in attorney's fees, however, acted in its original jurisdiction capacity set forth in § 3-5-302, MCA; the court did not act on appellate review.

¶23 Bugger initially sued both McGough and Johnson in justice court, but served only McGough. Bugger never served Johnson in justice court. The District Court dismissed

6

Johnson without prejudice from Bugger's justice court appeal and granted summary judgment in favor of McGough. Bugger's justice court action ended at that time.

¶24 Bugger then initiated a new action in District Court when she filed an amended complaint on December 16, 2002. Bugger's filing of the amended complaint triggered the District Court's original jurisdiction on the claim. Thus, the $7,000 limit to justice court actions provided in § 3-10-301(1)(a), MCA, does not apply and the District Court's award of $20,479.71 for attorney's fees and costs fell within the court's jurisdictional limit.

## ISSUE TWO

¶25 *Did the District Court properly grant summary judgment in favor of McGough?*

¶26 Bugger argues that the District Court improperly granted McGough summary judgment on the grounds that he failed to disclose his managerial position, and, therefore, the MLTA permits Bugger to proceed directly against him. The general provisions of the MLTA state, however, that, "[a] person has notice of a fact if . . . a person has actual knowledge of it." Section 70-24-108(1)(a), MCA. Bugger's actions reveal that she possessed actual knowledge of McGough and Johnson's respective roles as caretaker and landlord. Bugger addressed a letter to Johnson requesting payment for her damaged refrigerator, issued her rent checks to Karen, Johnson's wife, and requested the balance of her deposit back from Johnson.

¶27 Moreover, McGough disclosed to Bugger his caretaker role, never entered into any lease agreement with Bugger on behalf of Johnson, or ever possessed or retained any of Bugger's security deposit. Bugger pursued her claim against the improper party in her

7

justice court action in light of the fact she knew the actual identity of Johnson, the landlord. The District Court properly granted McGough's motion for summary judgment.

## ISSUE THREE

¶28 *Did the District Court abuse its discretion when it granted Johnson's motion to withdraw certain admissions?*

¶29 Bugger argues that the District Court abused its discretion by permitting Johnson to withdraw facts deemed admitted. The District Court sits in the best position to determine good faith discovery efforts. *In re S.C.*, ¶ 16. We will not reverse the power of the trial court to act pursuant to Rule 36(b), M. R. Civ. P., unless it is affirmatively shown that the court abused its discretion to the prejudice of the adverse party. *See Ag Sales v. Klose*, 199 Mont. 400, 405-06, 649 P.2d 447, 450 (1982).

¶30 Rule 36(b), M. R. Civ. P., provides that a court may permit withdrawal of an admission "when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits."

¶31 The District Court permitted Johnson to withdraw the admissions on the grounds that withdrawal would serve the presentation of the merits of the case and that Bugger had suffered no prejudice from the late filing. Johnson filed his responses two days after the deadline and more than 18 months before the trial. The court determined that Bugger had known throughout this period that Johnson disputed the admissions as she possessed Johnson's responses and objections. The court determined that Bugger had ample

8

opportunity to depose Johnson or engage in further discovery on these issues. In fact, the District Court also reopened discovery on these issues until August 5, 2004, to eliminate any possible prejudice to Bugger. The District Court did not abuse its discretion under these circumstances.

## ISSUE FOUR

¶32 *Did the District Court's instructions and special verdict form fully and fairly instruct the jury on the applicable law?*

¶33 Bugger argues that the District Court "failed to apply the Landlord Tenant Act as written." In reviewing whether a particular jury instruction was properly given or refused, we consider the instruction in its entirety, as well as in connection with the other instructions given and with the evidence introduced at trial. The party assigning error to a district court's instruction must show prejudice in order to prevail, and prejudice will not be found if the jury instructions in their entirety state the applicable law of the case. *Kiely Const., L.L.C.*, ¶ 62 (internal citations omitted).

¶34 Bugger fails to demonstrate any prejudice resulting from the jury instructions. Bugger did not object at trial to any particular instruction. In fact, Bugger fails to point to any specific instruction with which she finds fault. The jury instructions in their entirety correctly state the applicable provisions of the MLTA. *Kiely Const., L.L.C.*, ¶ 62.

¶35 Bugger's also argues that the special verdict form presented the jury with questions of common law tort and contract law contrary to the MLTA. The MLTA specifically permits, however, "the principles of law and equity, including the law relating to . . . mutuality of obligations, principal and agent, real property . . . estoppel,

9

fraud, misrepresentation, . . . or other validating or invalidating causes, [to] supplement its provisions." Section 70-24-105, MCA. The District Court correctly presented the jury with the applicable and correct statements of the law of the case.

ISSUE FIVE

¶36   *Did substantial evidence support the jury verdict?*

¶37   Bugger asserts no substantial evidence supports the jury verdict in favor of Johnson. We must view the evidence in the light most favorable to the prevailing party. *Moore v. Beye*, 2005 MT 266, ¶ 11, 329 Mont. 109, ¶ 11, 122 P.3d 1212, ¶ 11.

¶38   Johnson and Bugger presented substantial evidence regarding Bugger's move-out date and the move-in date of the next tenant, Julie Troxler. The parties cite to this evidence to establish the 30-day time frame when the law required Johnson to return Bugger's remaining security deposit. Bugger testified she moved out by September 5, 2000, while Johnson claimed she waited until late on the night of September 6, 2000. Both McGough and Troxler testified that Troxler moved in September 7, 2000, and Bugger still occupied the premises up until the night before. Johnson also presented the letter he wrote to Bugger, dated October 4, 2000, that itemized the damages deducted from the security deposit along with a check for the remaining amount. The jury weighed the conflicting evidence and found Johnson's more credible. We "may not substitute [our] judgment as to the proper amount of damages for that of the jury simply because the jury chose to believe one party over another." *Moore*, ¶ 11 (citing *Thompson v. City of Bozeman*, 284 Mont. 440, 446, 945 P.2d 48, 52 (1997)).

¶39 Bugger's next argument again relates to the evidence of the actual move-out date and when Bugger permitted McGough to do a final walk-through of the property to assess any cleaning deficiencies. McGough testified Bugger did not vacate the premises until the night before Troxler moved in, and, as a result of Bugger's delay, she left no time to clean before her required move-out date. Troxler testified the house needed substantial cleaning when she arrived. The jury apparently found McGough and Troxler more credible on these points. *State v. Trull*, 2006 MT 119, ¶ 20, 332 Mont. 233, ¶ 20, 136 P.3d 551, ¶ 20.

¶40 Finally, Bugger contends she did not receive a written statement of conditions until months after the execution of the original lease agreement and that Johnson did not satisfy his burden to prove damage and cleaning deficiency by clear and convincing evidence. Steve McGough testified, however, that he built the house and rented it new to Bugger. Johnson introduced receipts for cleaning and damage repairs to the house and presented photos of soiled and damaged areas of the house including pet stains on the carpet. Bugger herself testified that she never received authorization permitting a dog on the property and that she failed to professionally clean the carpet even though required by the lease agreement. Once again, the jury apparently found McGough and Johnson more credible on these points. *Trull*, ¶ 20. It is not this Court's function to agree or disagree with the verdict. *Moore*, ¶ 11. We therefore affirm the District Court.

## ISSUE SIX

¶41 *Did the District Court abuse its discretion in awarding $20,479.71 to Johnson in attorney's fees and costs?*

¶42 Bugger challenges the District Court award of attorney's fees in favor of Johnson on the grounds that the award included costs of an expert for the attorney's fee hearing and that the award far exceeds the $819.68 security deposit in dispute. Both the MLTA and the parties' agreement provide for the award of attorney's fees and costs to the prevailing party. *Doig v. Cascaddan*, 282 Mont. 105, 113, 935 P.2d 268, 272 (1997).

¶43 Bugger challenges the District Court's inclusion in Johnson's award of the amount of attorney's fees and costs that Johnson incurred in determining his attorney's fees and costs. This Court previously stated, however, that "[t]ime spent determining attorney fees is as much a part of the case . . ." as adjudicating the claim itself. *Donnes v. Orlando*, 221 Mont. 356, 362, 720 P.2d 233, 238 (1986). Thus, the District Court possessed authority to award these additional fees and costs.

¶44 We turn finally to whether the $20,479.71 award of fees and costs was unreasonable. Rule 9(a), M. R. App. P., imposes a duty upon the appellant, Bugger in this case, to present the Court with "a record sufficient to enable it to rule upon the issues raised." Bugger raised the issue of the reasonableness of the attorney's fees award, but she failed to provide the Court with a transcript of the attorney's fees hearing. Rule 9(a), M. R. App. P., clearly imposes the duty upon Bugger to provide the Court with a sufficient record with which to rule upon the issues raised.

¶45 Absent a transcript of the fee hearing to review, we cannot say that the District Court abused its discretion in awarding to Johnson $20,479.71 in attorney's fees and costs based on the record presented. *Chase*, ¶ 15.

¶46    Johnson also requests attorney's fees and costs on appeal.  The lease agreement and Rule 33(a), M. R. App. P., entitle Johnson, the prevailing party, to recover reasonable attorney's fees and costs on appeal.  *See Peschel Family Trust v. Colonna*, 2003 MT 216, ¶ 47, 317 Mont. 127, ¶ 47, 75 P.3d 793, ¶ 47.

¶47    We affirm the judgment of the District Court and remand to the District Court for a determination of Johnson's reasonable attorney's fees and costs on appeal.


/S/ BRIAN MORRIS


We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ JIM RICE